## Grote v. Blakely, et al.

(Decided September 23, 1924.)

### Appeal from Kenton Circuit Court.

1. Trial—Occurrences at Other Places Held Admissible Only in Determining Whether there was a Conspiracy to Assault and Humiliate.—In action against members of a patriotic league, for conspiracy to assault and humiliate, where plaintiff proved all that occurred at place where he was assaulted, and also at all other places party visited during the evening, court properly instructed jury that they should only consider what occurred at other places in determining whether there was a conspiracy and its purpose; proof being clear that defendants had no idea plaintiff was at place where he was assaulted, and that meeting with him was entirely unexpected.

2. Evidence—Newspaper Accounts of Assault Written by Parties to Conspiracy Not Admissible.—In action against members of a patriotic league for conspiracy to assault and humiliate, newspaper accounts of the assault, written by members of the party making the assault after the party had accomplished its purpose and the men had gone to their homes, were not admissible against other members of the alleged conspiracy.

3.  Evidence—What Second Party of Patriots Did Three Weeks After
    Alleged Assault Held Inadmissible in Action for Conspiracy to
    Assault and Humiliate.—In action against members of a patriotic
    league for conspiracy to assault and humiliate, court properly re-
    jected evidence that a similar party went out about three weeks
    after alleged assault on plaintiff; acts of the second party not
    throwing light on what first party did, and it not being composed
    of same men, though some men in first party were in second.

FREDERICK W. SCHMITZ and O. M. ROGERS for appellant.

JOHN E. SHEPARD, MAURICE L. GALVIN, LEWIS F. BROWN
and U. J. HOWARD for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Affirming.

Joseph C. Grote brought this action against Stephen
L. Blakely, John B. O'Neal and four others, charging that
prior to June 5, 1918, the defendants had confederated
for the purpose of intimidating, assaulting and otherwise
injuring divers persons in the city of Covington, and for
the purpose of intimidating, humiliating and disgracing
him; that pursuant to the conspiracy, with a large number
of other persons, they entered the business place of Frank
Rowekamp and there maliciously and with great violence
assaulted and beat him and forced him to mount a table,
and subjected him to further gross insults while forced
to remain standing upon the table, in all to his damage in
the sum of $50,000.00, for which he prayed judgment.

The defendants filed answer traversing the petition.
The defendant Blakely admitted the assault and pleaded
certain facts in mitigation of damages. A reply was filed
which made up the issue, and on a hearing of the case in
the circuit court before a jury there was a verdict and
judgment against the defendant Blakely in favor of the
plaintiff for one cent, and judgment in favor of the other
defendants. The plaintiff appeals.

The facts briefly stated are these: In the spring of
1918, there was much talk in Covington about certain
citizens of German blood being opposed to the United
States and in favor of Germany in the war. While this
talk was at its height a number of horses at the United
States camp at Fort Thomas suddenly died, as was sup-
posed by poison, and there was a sentiment in the city
that the death of these horses was due to poison admin-
istered by someone who was in favor of Germany and op-
posed to the United States in the war. A public meeting
was held at which the defendant Blakely, who was the

Commonwealth's attorney of the district, made a speech in which he held up to scorn the person who was working for Germany and fighting the United States in poisoning these horses. About this time an organization was formed, known as the Citizens' Patriotic League, for the purpose of cultivating patriotism and discouraging pro-Germanism. After Blakely made this speech, in which he said, in substance, that the man who had done this deed should have a bomb put under him and blown up. Grote on a number of occasions said that Blakely should have a bomb put under him and he should be blown up, and he made a number of like statements about Blakely.

These statements, probably five or six in number, were reported by different persons to Blakely before June the 5th and near that time. A little before June 5th Congress had passed the Espionage Act of May 16th, and a placard was printed by the Citizens' Patriotic League containing the third section of the act and stating that the members of the league intended to see that this law was respected, and that it was the duty of every patriotic citizen to assist in purging Kenton county of the disloyal element. On the evening of June 5th a number of men got together and went out in automobiles to post these placards at places where they had information that disloyal meetings had been held. There were from sixty to one hundred men in the party of the best citizens of the city, and twenty-five or thirty-five automobiles. Blakely and O'Neal acted as spokesmen of the party at the places where they stopped. They put up their placards at every place. After they had gone to eight or ten places they reached the Rowekamp place a little after nine o'clock. Grote was sitting there watching a game of cards. When the party came in, O'Neal acted as spokesman; he addressed Rowekamp, saying that there was a body of Americans belonging to the Patriotic League and had come there to put up a notice in his place; that he had to live up to it. Rowekamp said that he was not a pro-German and that there had been no pro-German meetings there. Some of the crowd jeered at this, and O'Neal requested Rowekamp to stand on the table, which he did. While this was going on Blakely, who had come in with O'Neal, saw Grote and he immediately went up to him and asked him if he had made the statements about Blakely above referred to. Grote did not answer and thereupon Blakely slapped him in the face; he continued to ask him about other statements he heard that

he had made; Grote still didn't answer and he slapped him again. This occurred several times, making Grote's nose bleed. At Blakely's suggestion Grote got upon the table with Rowekamp and some of the crowd called him a pro-German. In a few minutes the party left and Grote went home. They left the notice nailed on a door inside the room.

The court allowed the plaintiff to prove all that occurred at Rowekamp's place. He also allowed the plaintiff to prove all that occurred at all the places the party visited that evening, but in each instance told the jury that they should only consider what occurred at these other places in determining whether there was a conspiracy, as charged in the petition, and for what purpose it was formed. This was proper. The proof is clear that none of the defendants had any idea that the plaintiff was at Rowekamp's place when they went there and that the meeting with him was entirely unexpected. The proof as to what occurred at other places was only competent to show what were the purposes of the party in going out and putting up the notices that evening.

Three newspaper men were in the party; they wrote out and put in their papers the next morning an account of what was done. The court refused to allow these papers to be read to the jury. This was proper. These accounts were written after the party had accomplished its purpose and the men had gone to their homes. The newspaper men simply went along to get the news and what they subsequently wrote was not admissible evidence against any other members of the conspiracy than the man who did the writing. The court allowed everything to be told that happened that evening. These articles if read to the jury would have added nothing to the facts before the jury, except as they might confirm or contradict the testimony of certain witnesses, and clearly they were not competent for this purpose.

The plaintiff offered to show that there was a similar party which went out on June 24th, or nearly three weeks after the assault on Grote. This evidence was properly rejected. What the second party did threw no light on what the first party did. The two parties were not composed of the same men, although some men in the first party were in the second.

The trial of the case consumed about a month and on the whole record we do not see that there was any essential error in the admission or rejection of evidence. On

the contrary, we are of the opinion that the real merits of the case were fairly before the jury on the evidence.

Much complaint is made of the instructions. They are too long to be inserted in this opinion. They were carefully prepared and state the law of the case very clearly and accurately.

It is insisted that the court erred in not instructing the jury peremptorily to find a verdict against all the defendants, as well as against Blakely, but nobody assaulted Grote but Blakely, and to have given a peremptory instruction against all of the other defendants would have been to ignore entirely their testimony in the case, for if their testimony was true they were in nowise liable for what Blakely did.

The court properly told the jury what would be a lawful confederating of persons together for the purpose of aiding in procuring the observance or the enforcement of law, and he properly defined to them what would be an unlawful confederating for this purpose and to what extent each of the persons so confederating would be liable for the acts of the others, and he properly told the jury that all of the defendants were liable, if they believed from the evidence that all of them were so confederating. He properly told the jury that they should in any event find a verdict against Blakely and award the plaintiff at least nominal damages, and that the provocation which Blakely had received, if any, could only be considered in mitigation of punitive damages. Complaint is made of the definition of assault and the definition of malice. But these definitions could not possibly have affected the verdict.

On the whole case we find no substantial error in the record to the prejudice of appellant. Judgment affirmed.